### Andrew H. Hopper v. Stephen Lutkins.

If the purchaser of a mill-seat and water-power accepts from the vendor a deed, without any covenant for his protection, as to the height of the dam, or the extent of the flow to which he is entitled, and the purchaser is subjected to damages by reason of the improper height of the dam, he is without remedy either at law or in equity.

If it was designed by the parties that a deed should contain covenants, and they have by mistake been omitted by the scrivener, the mistake will be corrected by a court of equity, and the deed reformed accordingly.

If the deed contain full covenants of warranty as to the height of the dam, and the covenants are broken, a court of equity will not injoin the vendor from proceeding at law to recover the purchase money, nor set off the damages sustained by the vendee by the breach of such covenants against the claim of the vendor for the purchase money, but will leave the parties to their remedies at law.

There is no mode in which the damages sustained by the breach of such covenants can be satisfactorily ascertained in a court of equity.

A court of equity can interfere to set off the damages sustained by the vendee by breach of the covenants in his deed, against the claim of the vendor for the purchase money, only where the covenants are such that the damages resulting from the breach can be ascertained according to the practice of the court.

Bill for injunction and relief, filed September tenth, eighteen hundred and forty. The bill charges, that in the month of March, eighteen hundred and thirty-five, the defendant, representing himself to be seized in fee of certain lands and premises particularly described in the deed thereinafter set forth, and of the dam in the said deed mentioned, and of the right to keep the said dam at the height it then was, and to overflow the lands which were overflowed by the waters above said dam while kept at the height it then was, bargained and agreed with the complainant to convey to him in fee simple, by a good deed of bargain and sale, the said land and premises, and the mills thereon, and the dam and the mill-pond thereto belonging, and the water privilege with the right of overflowing the lands above said dam as far as the waters of the Saddle river (on which the said dam was erected) would overflow the same, at the height

13*

the said dam then was, for the sum of seven thousand dollars; to be paid by the complainant,—and that the defendant agreed to convey said lands and premises, with said appurtenances, to the complainant, as aforesaid, by deed containing the usual covenants against incumbrances, and of warranty, seizin and right to convey. That in pursuance of the said agreement, and as the performance of the same, the said defendant and his wife, on or about the nineteenth day of March, eighteen hundred and thirty-seven, made and executed to the complainant a deed, which is set forth in the bill, and is in the usual form.

The bill further charges, that a great part of the value of the said property, consists in the mills, and the water power thereto belonging, and that the said mills and water rights was one of the principal inducements for the complainant's purchasing the farm at the large price he paid therefor, and that the complainant would not have purchased at that price, unless it had been agreed that the defendant should convey and warrant unto the complainant, the said water power and privilege at the height of the dam, as it stood at the time of the said conveyance, and that the said deed was drawn by the conveyancer who drew the same without specifying the height of the dam and the extent of water privilege thereby conveyed, through inadvertence and mistake ; he, the conveyancer, supposing that the terms of said deed were sufficient to convey and warrant unto the complainant said water power and dam at the height at which the dam stood at the time of said conveyance ; and that the deed was accepted by the complainant under the like mistake and misapprehension ; and that at the time of the said conveyance, it was the intention of both the parties thereto, that the said dam and water power should be conveyed and warranted to the complainant, at the height at which the said dam then stood.

The bill further charges, that soon after the said conveyance, and on or about the eighteenth of April, eighteen hundred and thirty-five, the defendant executed to the complainant a bond to indemnify the complainant against a suit then begun, by

one Stephen Berdan, against the complainant, on account of the said dam, at the height at which it was at the time of the said conveyance, causing the water to overflow the lands of said Berdan, and in the said bond the defendant recited that he had by the aforesaid deed, conveyed to the complainant the said lands and mills, and also the said dam at the height it then was. That the said Berdan, before the said sale and conveyance to the complainant, had commenced an action in the Bergen pleas against the said Stephen Lutkins, for damages for overflowing lands of said Berdan, by reason of the said dam being at a greater height than the said defendant had any right to keep or maintain it; and that the said Berdan, at September term, eighteen hundred and thirty-five, recovered judgment in the said suit against the defendant. That Berdan still threatens further suits against the complainant for damages by reason of the said dam still being at an unlawful height, and to compel him to reduce it.

That at the term of March, eighteen hundred and forty, one John R. Post, who since the said conveyance to the complainant has become the owner of adjoining lands, commenced an action against the complainant, for damages, for overflowing his lands, by the said dam being kept at an unlawful height, although at the time of the alleged grievance, the dam was no higher than it was at the date of the said conveyance.

The bill further charges, that at the time of the said purchase by the complainant, he gave to the defendant his note for one thousand two hundred and fifty dollars as part payment for the farm; that one thousand dollars of the principal of the said note still remains due and unpaid, and that the defendant has commenced an action at law against the complainant for the recovering thereof; that the defendant is a man of small means, and speedily becoming impoverished, and that if permitted to recover the amount unpaid on said note, the complainant will be unable to collect from him the amount of damages that may be recovered by reason of the breach of the covenants contained in said deed; and that unless the complainant can retain the

same out of the amount due on said note, the complainant will be without adequate remedy in that behalf.

The prayer of the bill is, that the defendant may be compelled by the order and decree of the court to amend said deed, so as expressly to convey to the complainant in fee simple, the water privilege therein mentioned, at the height of the dam as it was at the date of the said conveyance, and that it may be ascertained under the direction of the court, whether the defendant had a right to convey to the complainant, at the date of said deed, the water privilege and power, at the height at which said dam then was, and at what height the defendant had right and power to convey said dam and water privilege, and what deduction ought to be made from the price agreed to be paid by the complainant for said lands, mills, and water privileges, on account of the want of right in the defendant to convey said water right at the height at which the said dam then was, and that in the mean time the defendant may be restrained from proceeding with his action at law for the recovering of the said note.

Upon filing the bill, an injunction was issued, as prayed for.

The defendant, by his answer, denies that he represented himself to be seized in fee simple of the right to keep the said dam at the height it then was, or to overflow the lands which were overflowed while the dam was kept at that height; denies that it was the intention of the parties to said deed, that the said dam and water power should be warranted to the complainant at the height it then was; denies that he bargained and agreed with the complainant to convey to him in fee simple, the said water privilege, and the right of overflowing lands as far as the said dam would overflow the same at the height it then was, or that he ever agreed to warrant the right of continuing the dam at that height; denies that such warranty was ever required by the complainant, or that defendant ever intended to give it; denies that there was any misapprehension on the part of defendant in executing said conveyance, or any mistake in drawing the same; admits the execution of the deed,

[Hopper v. Lutkins.]

and insists that it was drawn and executed pursuant to agreement between the parties ; denies all mistake or misapprehension on the part of the conveyancer who drew the deed, and insists that it was drawn pursuant to his instruction ; denies his inability to satisfy the complainant for any damages to be recovered for a breach of covenants.

The cause was heard on motion to dissolve the injunction, upon bill and answer.

*Wright* and *I. H. Williamson,* in support of the motion.

*A. O. Zabriskie,* contra.

THE CHANCELLOR.    I am well satisfied the injunction in this case should be dissolved.    The only equity in the bill, is the charge of mistake in drawing the covenants of the deed, and that is explicitly, and fully denied, by the answer.    The other grounds upon which relief is sought, cannot, from the view I take of the case, be sustained.    The facts as they appear from the pleadings are, that the complainant, in eighteen hundred and thirty-five, purchased a farm in Bergen county of the defendant, with a mill seat and water privileges.,    The deed contains the usual covenants of seizin, of warrantee, and against incumbrances.    The complainant insists, that he purchased with the understanding that the dam stood at its proper height, and that the covenants were intended in express terms to secure to him that right.    At the time of the conveyance, a suit was pending in the common pleas of Bergen, by Stephen Berdan against the defendant, for overflowing his lands by reason of the dam being higher than it should be, and in which action there was a recovery subseqently had, in favor of the plaintiff.    The dam was at the same height when the injury complained of in this suit took place, as when the sale was made by the defendant to the complainant.    Berdan having succeeded in his action, now threatens a further prosecution against the complainant for not reducing his dam to the height, as settled by the

[Hopper v. Lutkins.]

verdict in his suit against the defendant. The bill also charges, that John R. Post, another owner adjoining this mill seat, has commenced a suit in the circuit court of Bergen against the complainant, for overflowing his lands by the height of the same dam, and that such suit is still pending, undetermined. The dam has remained at the same height as when complainant purchased. In part payment for this farm, the complainant gave the defendant his promissory note, now past due, for twelve hundred and fifty dollars. There is remaining unpaid on that note one thousand dollars, besides interest. To recover this money, the defendant commenced an action at law against the complainant, and he was injoined from further proceeding thereon, until the alleged mistake in the deed could be corrected and he should fulfil his covenants and agreements with the complainant, or until further order.

This bill, then, has two objects; to reform the deed made by the defendant, and to injoin him from proceeding to collect the note of twelve hundred and fifty dollars.

Upon the first ground, the complainant will be at liberty, if he thinks proper, to proceed and take the proofs in this case; but as the defendant denies that any mistake was made, we are to see what propriety exists in the remaining part of the case for continuing the injunction.

I deem it no part of my province, on this motion, to settle how far the covenants actually go; whether they have any reference to the height of the dam or not. That will be determined when the question shall arise before the proper tribunal.

If the complainant has taken a deed without any covenants for his protection, in the flow of this water, then he is without remedy for his damages, either at law or in this court. If, however, it was designed by the parties that the deed should contain covenants, and they have by mistake been omitted by the scrivener in drawing it, that mistake will be corrected and the deed reformed accordingly.

But suppose the deed to contain full covenants, as contended for by the complainant, (and that is giving him the advantage

[Hopper v. Lutkins.]

of his whole case,) what relief can this court afford him against the payment of his note? The object is, undoubtedly, to set off the complainant's damages, sustained under the covenants in his deed, against the note which he gave as part of the purchase money for the property. Can this be done?

As yet, it must be remembered, the complainant has sustained no actual damages. A suit is instituted against him, and another is threatened, but no recovery has been had. There is no mortgage on which the party is seeking the aid of the court for a foreclosure and sale of the premises, but a note on which the defendant is pursuing his legal remedy to recover his money. If this injunction against the collection of this note is continued, how long is it to be continued? Only until the suit now pending for damages against the complainant, by John R. Post, is determined? This would not ascertain the amount of the complainant's damages; for Post may repeat his action, and it seems that Berdan and perhaps others intend to bring suits also against him. To carry out the relief sought, it must continue until all the damages which the complainant can be put to, (and which the covenants are designed to protect him against,) are ascertained and settled. This would be a very uncertain period, and proves to my mind that a rule of this kind would be productive of great injustice. Whether these suits will ever be brought, or if brought will be repeated, is all beyond the power of this court to know, as the action of the parties is beyond its power to control.

How can this court, from the very course of its proceedings, ascertain in any satisfactory manner, the damages sustained by the flow of this water? Even at law it is often difficult to come to a result. I have been furnished with no case that goes the length here desired.

The complainant's counsel has referred me to the case of *Johnson and others* v. *Gere*, 2 *John. Chan. R.* 546; but that is by no means like the present. There the title to a part of the property sold was defective, and an ejectment was commenced for the recovery of the possession. The chancellor injoined the suit at law on the bond for the purchase money, and also proceedings

[Hopper v. Lutkins.]

on the mortgage; until the ejectment should be determined. This is widely different from settling damages arising from the overflow of lands. If a mortgagor is deprived by a trial at law of the half or other share of the land which he purchased, a computation may be made by a master of the value of that share, and it can be deducted from the amount of the mortgage; but how he would ascertain and adjust all the damages which this complainant may sustain by maintaining the dam in question at its present height, is more than I am able to discover. It would be impracticable, in my view of the case, to do so with any certainty. It is true that the same principle pervades both cases, that of preventing circuity of actions, and allowing a setoff of damages under covenants against the purchase money. The difference is, that in the one case it is practicable to do so, and in the other it is not.

In the recent case in this court of *Coster* v. *Monroe Manufacturing Co.*, I went upon the force of authority so far, after a judgment had been obtained in ejectment against the mortgagor for a part of the premises, for which he gave the mortgage, and after a re-purchase made by him of that part from the plaintiff in ejectment, to refuse a decree for sale on the mortgage, until the damages the defendant had sustained under his covenants, were ascertained by a master and credited on the mortgage. I still think that view of the case correct and attainable, but I do not see how it can be pressed further, so as to reach every possible case of damages arising under covenants.

In *Bumpus* v. *Platner*, 1 *John. Chan. R.* 217, and *Abbott* v. *Allen*, 2 *John. Chan. R.* 521, the doctrine goes no further, than that a court of equity will relieve a purchaser against the payment of the purchase money, upon a failure of consideration, after an eviction at law.

It would be a sufficient answer to the complainant in this case, to say, that he has sustained no damages, no recovery having been obtained against him. But even if one judgment had been obtained against him, it would not settle the damages on the

* Ante, vol. i. page 467.

[Hopper v. Lutkins.]

covenant, for the same party might repeat his action, or other landholders commence other suits ; and I therefore see no proper or correct course in a case like the present, but to leave the complainant to his remedy at law on his covenants, and to allow the defendant to proceed with his suit without the interference of this court.

Injunction dissolved.